RENFRO v. KEEN (two cases).

Middle Section.    August 10, 1935.

Petition for Certiorari denied by Supreme Court, January 11, 1936.

Luther Creasy and Floyd Creasy, both of Nashville, for plaintiffs in error.

J. W. Murrey, of Gallatin, and Laurence B. Finn, of Bowling Green, Kentucky, for defendants in error.

DeWITT, J. These two actions, one for personal injuries to the minor, James Franklin Renfro, the other for expenses and loss of services incurred by his father, were brought in the circuit court of Sumner county and resulted in dismissal upon verdict directed by the trial judge upon motions of the defendant, at the close of the evidence offered for the plaintiffs. The suits were tried together. The plaintiffs appealed in error to this court. Their assignments of error may be reduced to the single proposition that the action of the trial judge in directing verdicts for the defendant was erroneous. The motion which was sustained by the trial judge was based upon the following grounds:

First, that there was not sufficient proof of negligence to support the plaintiffs' causes of action.

Second, that the plaintiffs' evidence showed that the plaintiff (James Franklin Renfro), himself, was guilty of negligence that so contributed to the accident and injuries complained of in the plaintiffs' causes of action, that but for same said accident and plaintiff's injuries would not have occurred.

On the night of July 28, 1934, James Franklin Renfro, twenty years of age, was seriously injured while riding as a guest on a commercial truck which was driven off a curve and down an embankment on the Austin Peay highway west of Portland, in Sumner county. The truck was owned by T. C. Keen and was being operated on his business by Walter Dinkins, his employee. There was evidence from which the jury might reasonably have found that the accident occurred from negligent, careless operation of the truck by Dinkins; and if Renfro, while riding as a guest, was not guilty of negligence as a proximate cause of his injuries, the jury could have awarded to him a recovery against Keen under the rule of respondeat superior. But the question here presented is whether or not the evidence shows without dispute, and with only one reasonable deduction therefrom, that the proximate cause of the injuries to Renfro was his failure to take those precautions for his safety that the law required of him under all the circumstances. It is only when the facts are incontrovertible and such that all reasonable men must reach

the same conclusion thereon, that a question of negligence or contributory negligence becomes one for the court to determine; it then being solely a question of law. Chattanooga Light & Power Co. v. Hodges, 109 Tenn., 331, 333, 70 S. W., 616, 60 L. R. A., 459, 97 Am. St. Rep. 844; Kansas City M. & B. Railroad v. Williford, 115 Tenn., 108, 88 S. W., 178; Philip Carey Roofing & Mfg. Co. v. Black, 129 Tenn., 30, 164 S. W., 1183, 51 L. R. A. (N. S.), 340.

The material evidence offered for the plaintiffs tended to show the following facts:

James Franklin Renfro was invited by Dinkins, the employee of Keen, to ride with him on the truck from Scottsville, Kentucky, to Springfield, Tennessee, to get some property used in a carnival. They were brothers-in-law, and Renfro had ridden with Dinkins a few times before. They left Scottsville between 6:30 and 7 P. M. on July 28, 1934. Dinkins drove the truck. He drove at the rate of thirty to thirty-five miles an hour to Portland, Tennessee. There was a hard rain and a fog and it was dark. They stopped for a while at Portland, and there a driver of another truck accompanying the truck in which they were riding told them that they were late and should speed up. When they left Portland, Dinkins drove the truck in rain, darkness, and fog at the rate of thirty-five to forty miles an hour. The road was wet and slick. Renfro was sitting with the driver on the front seat. He testified that he was looking out, watching the road, and trying to take care of his own safety. About three or four miles west of Portland they went over a little bridge and the truck "bounced around"—the rear end. Renfro said that then he told Dinkins to slow down, but he did not give him any answer and did not slow down. Later they went at the same rate over a hill and lost the tailgate of the truck. Renfro testified that then he told Dinkins to slow down and said, "You'd better hold this thing," to which Dinkins replied, "Hell, boy, you ain't scared, are you?" And Renfro told him that he was scared. Dinkins did not reduce his speed. About one to two miles further, going at the same speed downhill they came to a sharp right-hand curve. Instead of rounding the curve the truck went straight on, off the road, down an embankment, and turned over. Renfro was seriously injured. Renfro testified that Dinkins was going too fast, got to the curve too quickly to make the curve, and ran straight off. The road was of asphalt surface with black top. The accident occurred between 10:30 and 11 o'clock. Renfro had never been over this road before. The road was wet, slippery, winding, and when the truck approached the curve the driver was driving at such a speed that he could not stop within the range of his lights before reaching the curve. Renfro testified that the driver did not hear his first request that he slow down.

In Dedman v. Dedman, 155 Tenn., 241, 291 S. W., 449, 451, after

noting that our cases (Stem v. Interurban Ry., 142 Tenn., 494, 221 S. W., 192; Hurt v. R. Co., 140 Tenn., 623, 205 S. W., 437; Knoxville Ry. & Light Co. v. Vangilder, 132 Tenn., 487, 178 S. W., 1117, L. R. A. 1916A, 1111; Tennessee Central R. Co. v. Vanhoy, 143 Tenn., 312, 226 S. W., 225) hold that a guest cannot rely upon the care and vigilance of the driver to the extent of relieving himself from the exercise of reasonable precautions for his own safety—the obligation being personal and continuing—it was pointed out that in all the cases thus far decided by our Supreme Court the question of the guest's contributory negligence had been held to be one for the jury. The rule had been established that if an adult, while riding in a car driven by another, sees, or ought by due diligence to see, that the driver is not taking proper precautions, it is the duty of the passenger or guest to remonstrate, or give some warning of danger, and a failure to do so is negligence.

In Lea v. Gentry, 167 Tenn., 664, 73 S. W. (2d), 170, 173, these rules are restated, and upon the question of submission to the jury the court said:

"The distinctive principle is this: When the facts show without dispute that the guest was conscious of the peril inherent in the driver's condition or conduct, the court may adjudge contributory negligence as a matter of law; but where either (1) the evidence is in conflict as to the facts of the occurrence, or (2) where reasonable minds may differ as to the effect of the undisputed facts of the situation disclosed on the consciousness or knowledge of the guest of the peril involved in the condition or conduct of the driver, then the question is one for the jury."

Issues as to contributory negligence of guests who gave no warning or remonstrance were held to be for the jury and verdicts excusing such guests for such failures were sustained where the emergencies came suddenly and the view was obstructed [Stem v. Interurban Ry., 142 Tenn., 494, 221 S. W., 192; Johnson, Adm'r & Faucette v. Maury County Trust Co., 15 Tenn. App., 326; Tennessee Cent. Ry. Co. v. Vanhoy, 143 Tenn., 312, 226 S. W., 225; Knoxville Ry. & Light Co. v. Vangilder, 132 Tenn., 487, 178 S. W., 1117, L. R. A., 1916A, 1111; Nashville, C. & St. L. Ry. v. White, 158 Tenn., 407, 15 S. W. (2d), 1; Louisville & N. R. Co. v. Tracey, 12 Tenn. App., 167]; where there was a sudden collision not immediately to be anticipated [Claxton v. Claxton, 16 Tenn. App., 399, 64 S. W. (2d), 854; Woodfin v. Insel, 13 Tenn. App., 493]; where the guest was asleep and thus had no actual consciousness of the peril [Lea v. Gentry, 167 Tenn., 664, 73 S. W. (2d), 170]; where the plaintiff, a child, was sitting in her mother's lap and there was a sudden collision [Talley v. Dalton, 10 Tenn. App., 597]; and where the road was straight and smooth, the car was heavy and capable of attaining a high speed without noticeable vibration, in charge of an experienced operator, reputed to be careful, and the peril was sudden [Dedman v. Dedman, supra].

In all of the published decisions upon this subject, the "guest doctrine," relieving the guest from the consequences of the driver's. negligence, is qualified by the condition that the danger must not have been obvious or known to the guest, or passenger. The word "obvious" imports an obligation on the part of the guest to exercise due diligence to see and realize a danger. In the aforesaid cases it was for. the jury to determine, upon the peculiar facts of each case, whether or not the guest had exercised due diligence. In fact, in each of them the guest did not actually realize the danger and was reasonably excusable therefor. In another line of cases the guests were held to be negligent as a matter of law and were barred from recovery. Schwartz v. Johnson, 152 Tenn., 586, 280 S. W., 32, 47 A. L. R., 323 (where knowledge that the driver was intoxicated was indisputably brought home to the guest, and there was no dispute as to his consciousness of the peril inherent in such a situation); Louisville & N. R. R. Co. v. Anderson, 159 Tenn., 55, 15 S. W. (2d), 753; Steele v. R. Co., 154 Tenn., 208, 285 S. W., 582 (where the accidents occurred at railroad crossings and the perils were obvious to the guests); Hatch v. Brinkley (Tenn. Sup.), 80 S. W. (2d), 838 (where the contributory negligence of the guest, aware that her host was a careless driver, in not observing and warning the host that he was driving too close to the edge of the pavement, precluded the guest's recovery against the host for injuries resulting from the host's negligence). These latter cases came within the rule, supra, that "when the facts show without dispute that the guest was conscious of the peril inherent in the driver's condition or conduct the court may adjudge contributory negligence as a matter of law."

In Tennessee the standard of care already required of a guest. is that he must remonstrate or warn the driver against negligent driving whenever he sees or ought by due diligence to see that the driver is not taking proper precautions. A failure to conform to this standard is negligence. In the case before us the guest was fully conscious of the danger. Was his protest sufficient, under the circumstances, to relieve him from the imputation of negligence? Could only one conclusion be reasonably reached? Certainly the protest of the guest was completely unavailing and he knew it; nevertheless; he remained on the truck with no prospect of safer driving. Was it a sufficient conformance to the standard of care that he merely make two requests which were fruitless and then be excused from all responsibility for the consequences of staying on the truck? Could he be reasonably excused because it was on a lonely road on a dark and rainy night? As a matter of law, did he do all that a prudent person, conscious of the peril, should have done to promote his safety?

This question as to any further duty upon a guest, after making unavailing protest, has not been treated in any of our reported cases.

In other jurisdictions the rules adopted are in conflict. One rule is that an occupant is not absolutely guilty of contributory negligence if, after making protests, he does not demand that the driver stop the car and let him out—but that this is a question for the jury. King v. Pope, 202 N. C., 554, 163 S. E., 447; Dover v. Archambeault, 57 Cal. App., 659, 208 P., 178; Krause v. Hall (1928), 195 Wis., 565, 217 N. W., 290, 292, in which it is said:

"No case has been found, however, which attempts to define the amount of protestation necessary to relieve the guest of contributory negligence as a matter of law. When it is considered that the guest has no control over the automobile, and that it is not within his power to coerce the driver, it is apparent that all the guest may do is to indicate to the host his or her displeasure with reference to the manner in which the car is being driven. Under such circumstances, the considerate host will respect the feelings of his guest and modify his rate of speed, or other reckless conduct, to conform to the pleasure of his guest. Should the host persist in his reckless driving, the guest may ask to be let out of the car, but that he should do so under all circumstances has never been held his duty as a matter of law, so far as we are advised. Here the plaintiff did protest, not once, but several times. She did not ask to be let out of the car, and it was for the jury to say whether her failure in this respect constituted a want of ordinary care on her part. The jury might well have believed that the ordinary person would have taken chances on remaining in the car rather than be let out on a highway many miles from home on a dark night. It seems fairly plain that in every respect the question of plaintiff's contributory negligence was for the jury, and that their finding with reference thereto cannot be disturbed."

The theory of such decisions seems to be that when the guest has positively warned and protested, he cannot be deemed to have acquiesced in the misconduct of the driver; and that it is not reasonable to require that he leave the car in order to relieve him of any responsibility for his injuries.

The contrary rule has been approved and applied in other decisions. This rule requires that a guest confronted by obvious danger from negligent driving shall not only protest, but also demand that the driver stop and let him out if the protest is of no avail. Sharp v. Sproat, 111 Kan., 735, 208 P., 613, 26 A. L. R., 1421; Friedman v. Friedman, 40 Ariz., 96, 9 P. (2d), 1015; Sheehan v. Coffey, 205 App. Div., 338, 200 N. Y. S., 55; Maidman v. Rose, 253 Mass., 594, 149 N. E., 630; McLaughlin v. Pittsburgh Rys. Co., 252 Pa., 32, 97 A., 107; Unger v. R. Co., 61 Cal. App., 125, 214 P., 510; Bernhardt v. R. Co., 49 App. D. C., 265, 263 F., 1009; Kowalski v. Kelley, 183 Ill. App., 313; Hermann v. Rhode Island Co., 36 R. I., 447, 90 A., 813; Lorance v. Smith, 173 La., 883, 138 So., 871; Wachtel v. Bloch, 43 Ga. App., 756, 160 S. E., 97; Blazer v. Freedman, 165 Wash., 476, 5 P. (2d), 1031.

The philosophy of this rule is that prudence before obvious danger requires absolutely that when a guest sees that his mere request or protest is unavailing he cannot sit still and await disaster when he might remove the danger by getting out; or if he cannot persuade or coerce the driver into stopping and letting him out, he must at least try to do so, and only until he has made such earnest effort has he done all that he should do for his own protection and safety. This rule would import that there is only one reasonable or proper choice between remaining in the car and risking injuries and leaving the car on a lonely road on a dark and rainy night, especially in the summertime; that the latter is far better than very probable injury or death.

While it is clear that Renfro was confronted with an apparent possibility of an accident and injury, he did not know, after he made his second protest, that such a curve existed as that at which the truck went off. In Stem v. Interurban Ry., supra, it appeared in the record without dispute (although it is not stated in the published opinion) that the victim of the collision was a visitor from a distant city and was wholly unfamiliar with her surroundings; that she had never before passed over the crossing whereon she was killed, and there was nothing in the record from which it could be inferred that she had any knowledge or warning that she was approaching a railroad crossing. The question whether or not she, a guest, was negligent, was for the jury.

After all, it is a question what a prudent person would do under the circumstances. There is room in this case for some difference in the minds of reasonable men. They might conclude that Renfro was negligent in not demanding to be let out of the truck; or they might conclude that he could not anticipate that a more dangerous place might be reached, or that he reasonably thought that if such place were reached the driver would be more careful, or that the careless driving and the nature of the road would present no greater danger than that which he had already observed. In our opinion the issue was for the jury under the rules prevailing in Tennessee, and it was error to direct verdicts for the defendant.

The judgments in these cases are reversed, and the causes will be remanded for a new trial to a jury. The costs of the appeals in error will be adjudged against the defendant in error.

Faw, P. J., and Crownover, J., concur.